USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-24-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE GARDINE,

                    Plaintiff,

        - against -

R. MAXWELL, et al.,

                    Defendants.

**REPORT AND
RECOMMENDATION**

**08 Civ. 6524 (SHS) (RLE)**

**To the HONORABLE SIDNEY H. STEIN, U.S.D.J.:**

## I. INTRODUCTION

On June 28, 2008, *pro se* Plaintiff Wayne Gardine brought this action pursuant to 42

U.S.C. § 1983, alleging violations of the Eighth Amendment and New York State assault and

battery law. (Compl. at 5.) Gardine seeks $100,000 in compensatory damages. (*Id.*) Pending

before the Court is Defendants' Motion for Summary Judgment Dismissing Complaint. (Doc.

No. 22.) For the reasons that follow, I recommend Defendants' Motion be **GRANTED**.

## II. BACKGROUND

Gardine filed his Complaint against Correctional Officers Ricky Maxwell[1], Joseph

Rozak, and Brandon Roberts, all of whom were employed by New York State Department of

Corrections (DOCS) at Green Haven Correctional Facility ("Green Haven") when the incident

occurred. Gardine alleges that on January 27, 2008, Defendants hit him in his left eye, his back,

his sides, his legs, and his head while he was on the floor in a Special Housing Unit ("SHU")

hearing room. (Compl. at 3.)

---

[1]Defendant Maxwell is no longer employed by DOCS. (*See* Defs.' Mem. of Law in Supp. of Mot. for
Summary Judgment Dismissing Complaint ("Defs.' Mem.") at 1.)

## 1. Defendants' Version of the Facts

On January 27, 2008, correctional officers searched Gardine's cell and discovered an "unknown yellow liquid in lotion bottle behind toilet." (Nowve Dec., Ex. B - Tier III Disciplinary Hearing Transcript, at 43.) Correctional officers ordered a urinalysis based on this liquid and the "odor of marijuana earlier in the day." (*Id.*) Gardine stated that he could not pass urine because he had recently used the bathroom, and was taken to a SHU hearing room where he could be monitored to ensure he did not ingest any liquid, which might affect the test results. (Defs.' Mem. at 2; Nowve Dec., Ex. A - Gardine Dep. at 51-55, 62-64.) At approximately 1:30 p.m., while Gardine was in the SHU hearing room waiting to provide a sample (Plaintiff's Response to Summary Judgment ("Pl.'s Resp."), Ex. A - Unusual Incident Report.), he became agitated and began to pace back and forth in the small room. (*See* Defs.' Mem. at 3, Tape 1.[2]) Throughout the incident, he was handcuffed in front of his body. (Defs.' Mem. at 3.) After pacing, Gardine picked up a chair and hit it repeatedly against a window, eventually smashing the window. (*Id.*; Tape 1.) Gardine admitted to breaking the window at his Tier III Disciplinary Hearing. (Defs.' Mem. at 3; Nowve Decl., Ex. B - Hearing Tr. at 12, 55.) When Gardine hit the glass window with the chair, some of the glass hit and injured a correctional officer. (*Id.*) After breaking the window, Gardine then used some of the glass to cut himself on his left arm, both hands, and wrists. (Defs' Mem. at 4; Roberts Dec., Ex. A; Tape 1.) When Gardine said he would comply with the correctional officers, Defendants and other correctional officers entered the hearing room to remove him. (Maxwell Dec., Ex. A.) However, once Defendants began

---

[2]Defendants submitted three videotapes in support of the Motion for Summary Judgment. Tape 1 shows Gardine's conduct in the hearing room, Tape 2 shows actions taken by Defendants and other correctional officers in response to Gardine's actions, and Tape 3 shows Gardine being escorted from the hearing room to another room, where he was searched by correctional officers. (*See* Defs.' Mem. at 3.)

restraining Gardine to remove him, a correctional officer yelled "drop the weapon," Gardine began resisting officers, and a struggle ensued. (*Id.*) Defendants and the other correctional officers gave "several direct orders to stop resisting." Five or six correctional officers eventually wrestled Gardine to the floor. (*Id.*; Tape 1.) Gardine was then escorted to another room and searched by correctional officers. (Tape 3.) He was treated by DOCS medical staff for superficial lacerations to his right forearm, left hip, left ankle, and both hands. (Compl., Ex. - unnumbered DOCS Use of Force Report.) He also sustained swelling to his left eye and eyebrow. (*Id.*)

## 2. Gardine's Version of the Facts

Gardine alleges that he was assaulted by Defendants Maxwell, Roberts and Rozak. (Compl. at 3; Gardine Dep. at 109.) He claims he was hit in the eye, back, sides, legs, and head while cuffed on the floor. (Compl. at 3.) Gardine maintains that on the date of the incident Defendants searched his cell because he "refused to volunteer information" and "go with certain procedures." (*Id.* at 38-41.) He claims that he was moved from the shower to the hearing room for a urine test. (*Id.* at 50-61.) He asserts that he was "cuffed with chains" and a correctional officer was "banging on the window" of the hearing room "with a stick." (*Id.* at 62-65.) He claims that he blacked out, "the glass got broken," and "the chair broke the glass." (*Id.* at 66-69.) Gardine contends that he "can't remember . . . moving the chair.[3]" (*Id.*) He claims that he "was unconscious" of picking up any glass and cutting himself with it afterward, but concedes that he might have picked up the glass unconsciously and cut himself. (*Id.* at 73-74, 78-81.) Finally,

---

[3]Later, Gardine answered "Yeah" when asked if he had picked up a chair. (Gardine Dep. at 62-65.) He then said he couldn't recall if he had picked up a chair. (*Id.*) Eventually he stated that "it's a possibility that I moved it [the chair] but not with a straight state of mind." (*Id.*)

Case 1:08-cv-06524-SHS-RLE Document 36 Filed 02/24/10 Page 4 of 12

Gardine maintains that after the incident, he cut himself, and Defendants Maxwell, Rozak and Roberts assaulted him. (*Id.* at 85.) He claims that he does not remember or recall hearing any direct order to drop a weapon. (*Id.* at 83, 87.) He maintains that Defendants were hitting him on his back and head and that they turned the camera off. (*Id.*) He further alleges that Defendants hit his eye repeatedly and hit his head and side. (*Id.*) He argues there was no reed to restrain him because he was in handcuffs and he's a "skinny guy." (*Id.* at 86-89-92.) Gardine admits to pleading guilty to destruction of property at his Tier III Disciplinary Hearing, but asserts that he only pled guilty because he was "tricked" and "told off the record to do it." (*Id.* at 98-99.) After the incident, Gardine contends that he was given a medical examination and then taken to the mental health unit for a two-day psychiatric evaluation. (*Id.* at 102-05, 113.) He claims that he continued psychological treatment at Green Haven, but discontinued treatment when he was transferred to Southport Correctional Facility because it was "messing him up." (*Id.* at 122-25.) Gardine maintains that he should be awarded $100,000 in compensatory damages because he has suffered damage to his right eye[4] and his writing capability has diminished. (*Id.* at 130.) Specifically, he claims that he cannot see as well out of his right eye and that he is getting glasses to treat the condition. (*Id.* at 114-17.) He later states that "I start getting dizzy because my left eye is messed up." (*Id.* at 133.) He maintains that his writing capability has diminished because he has a hard time writing what he is thinking and what is "right." (*Id.* at 130-33.)

---

[4]There seems to be some confusion by Gardine as to which eye was injured. At times he asserts his left eye was hurt (*see* Compl.) and at others, he claims it was his right eye.

4

**3. The Videotapes**

*Tape 1 - SHU Hearing Room*

Tape 1 shows Gardine in the SHU hearing room. (14:10-14:33.) The tape depicts two camera angles, camera 1 and camera 3, and does not have audio. Camera 1 shows Gardine's position within the SHU hearing room. There is also a chair in the room. Camera 3 shows the room opposite to Gardine's SHU hearing room, on the other side of the double-sided mirror. The tape begins by showing Gardine being placed in the SHU hearing room. He begins to pace while handcuffed in front. At various times, Gardine is seen pacing, crouching on the floor, and speaking to the correctional officers. Approximately three and one-half minutes into the tape, a correctional officer walks into the opposite room, shown on camera 3. Simultaneously, camera 1 shows Gardine stand from a crouched position and turn toward the double-sided mirror. He raises his hands, turns away from the mirror, and appears to speak to someone else while facing the glass window just outside the camera. Then he turns to the double-sided mirror and repeatedly raises his hands to the glass, appearing to speak to the correctional officer.

Approximately four minutes later, Gardine suddenly grabs the chair in the room, raises it completely over his head and smashes it three times against an area that is not shown by the camera. He returns the chair to the ground, adjusts his grip, then picks it up again and smashes the area two more times. A small piece of what appears to be glass rolls onto the floor. A moment later, Gardine kicks the chair. The reflection in the double-sided mirror shows Gardine hovering near the area of the broken glass. When he fully reappears onto the main screen of

5

camera 1, he is holding an unidentifiable object[5] and vigorously rubbing it on both of his hands and wrists.

After that, he intermittently paces, raises his arms in the air over his head, and moves to the double-sided mirror, where he puts his hands on the wall just above the mirror. Approximately seventeen minutes into the tape, a correctional officer walks into the opposite room, and he and Gardine appear to engage in a conversation through the double-sided mirror for about one minute. At times during the conversation, Gardine gesticulates and moves from the mirror. About one minute or so later, the officer leaves and another officer enters and talks to Gardine for about thirty seconds. He then speaks into his walkie-talkie and leaves the room.

About twenty minutes into the tape, five or six correctional officers, including Defendants, rush into the SHU hearing room and begin to restrain Gardine. There is no punching, hitting, or kicking visible. The officers are working to control Gardine who seems to be struggling against them. Although one officer comes into the room with a baton, he does not use it, and he passes it back to someone out of the room and away from Gardine and the rest of the officers. The officers are seen working to restrain Gardine with body holds. The officers lift Gardine to a standing position against the wall and seem to gain control over him. There is no visible evidence of unreasonable use of force.

### *Tape 2 - Hallway Outside SHU Hearing Room*

Tape 2 shows the version of events from the perspective of the correctional officers outside in the hallway. The video begins by showing the correctional officers just after they have

---

[5] It is unclear what the object is, yet when Gardine raises his hands toward the camera approximately eighteen minutes into the tape, his hands are bloody. The object he used to cause himself to bleed appears to have been a shard of glass from the window.

6

put Gardine into the SHU hearing room. There are alternately one or two officers at a time guarding the SHU hearing room. The tape shows one of the officers jerking back from the window.[6] Approximately twenty minutes later, the officers rush into the SHU hearing room while others remain outside. The baton (which was seen being passed back by an officer in Tape 1) is seen being received by an officer who later leaves the area with it in his grasp, completely removing it from the area. It was not used. The chair is passed out of the room to an officer standing outside. The action comes to a standstill and the struggle seems to have finished because the officers are no longer engaged in any activity.

### Tape 3 - Gardine's Transfer from SHU Hearing Room

Tape 3 has audio and according to the officer narrating, the tape begins at "approximately 13:40 hours.[7]" The tape shows the officers taking Gardine from an elevator and walking with him down a hallway to another room where the officers perform a full strip search of Gardine. The tape shows that Gardine was capable of walking without problem. The only visible indication of the incident is a scuff mark on Gardine's shirt, near his left shoulder. During the search, it does not appear that there is any sort of mark on Gardine's skin near his left shoulder. His face, including his eyes, appeared unmarked[8]. Gardine is searched, and the tape ends

---

[6]The officer who jerked back from the window appears to be Officer Ferrick who was hurt and received medical treatment, via ambulance, at a nearby hospital. He was allegedly hit by some of the glass that flew from the window when it was smashed. (Hearing Tr. at 61-64.)

[7]The time stamp on the display screen indicates 2:39:21, which is approximately 14:40 hours. This may simply be a mistake by the speaker since the other two tapes both end around 14:30 hours, or, since most of the medical reports indicate the incident occurred at 1:30pm, it could be that the clocks on the video cameras were incorrect. The cameras are not synchronized and can be affected by power interruptions and time changes. (*See* Decl. of Mark Royce ¶ 8.)

[8]Gardine was treated by DOCS medical staff for superficial lacerations to his right forearm, left hip, left ankle, and both hands. (Compl., Ex. - unnumbered DOCS Use of Force Report.) He also sustained swelling at his left eye and eyebrow. (*Id.*)

approximately twelve minutes later.

## III. DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a

motion for summary judgment if it determines that "there is no genuine issue of material fact and

that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Under

this standard, summary judgment is proper if "viewing the record in the light most favorable to

the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and

that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v.

LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir. 1989) (internal quotations omitted), *rev'd on other

grounds*, 496 U.S. 633 (1990). In making this determination, the court does not resolve disputed

factual issues, but reaches a conclusion as to whether there exists "a genuine and material issue

for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1175 (2d Cir. 1993). An

issue of fact is "genuine" if it provides a basis for "a rational trier of fact to find for the non-

moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is appropriate where no reasonable trier of fact could find in favor of the

nonmoving party, *H. L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005,

1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a

frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d

Cir. 1987).

The party moving for summary judgment bears the initial burden of demonstrating the

absence of any genuine issue of material fact. *See Consarc Corp. v. Marine Midland Bank, N.A.*,

996 F.2d 568 (2d Cir. 1993) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

8

This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party satisfies this initial burden, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. "[T]he mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment." *Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985); *see also Anderson*, 477 U.S. at 247-48. If the nonmoving party fails to respond by "affidavits or as otherwise provided in [Rule 56, and] set forth specific facts showing that there is a genuine issue for trial[,] . . . summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the [videotape] record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The court should view the facts as depicted by the videotape. *Id.* Summary judgment may be granted when a plaintiff's testimony is largely unsubstantiated by direct evidence and is replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the plaintiff's allegations. *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (summary judgment affirmed where plaintiff alleged police brutality but could not identify any police officers, repeatedly confessed to either falling or jumping out of a window instead of allegedly being pushed by officers, and medical evidence was inconsistent with any police brutality allegations by plaintiff).

9

## 1. Gardine has Failed to Raise any Genuine Issue of Material Fact

Although Gardine contends that he was assaulted by Defendants, the videotapes show otherwise. The substance of Gardine's claim is based almost completely on his deposition testimony, which is not credible after viewing the videotapes. Tape 1 shows Gardine picking up a chair twice and smashing it into an area that was later determined to be the window. Gardine's explanations for the broken window span from his inability to remember whether he picked up the chair, to the chair being pushed against the door, to him kicking the chair. (Gardine Dep. at 65-69, 71-72.) Tape 1 also shows Gardine cutting himself. He states that if he did cut himself, he did so unconsciously. (*Id.* at 73-75, 78-80, 85, 87.)

Moreover, Gardine has failed to provide any direct evidence of his allegations against Defendants. He alleges that he "blacked out" during the incident but he does not provide the Court with any evidence of his blackout, such as medical documentation, psychological evaluations, or even that he told anyone after the incident that he experienced a "blackout." Even construing the facts in the light most favorable to Gardine, he has failed to present any facts or evidence to support his case. The videotape record entirely discredits Gardine's version of the facts such that no reasonable jury could believe him. Given that Gardine provides the Court with inconsistent allegations and nothing more, I recommend that Gardine's claims be **DISMISSED** and Defendants' Motion for Summary Judgment **GRANTED.**

## B. Eighth Amendment - Excessive Force Standard

To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must allege objective "physical force that is 'repugnant to the conscience of mankind.'" *Rivera v. Goord*, 119 F. Supp. 327, 341 (S.D.N.Y. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Subjectively, plaintiff must also establish that the prison guards acted "wantonly, with

10

the sadistic or malicious intent to harm him." *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Such use of force need not cause serious injury, but must be done maliciously with the intent to cause harm. *Id.* at 21-22. However, a *de minimus* use of force generally will not suffice to state a constitutional claim. *Id.* at 22 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993); *Hudson*, 503 U.S. at 10). The key inquiry in use of force cases is whether defendants' conduct involved an "unnecessary and wanton infliction of pain." *Sims*, 230 F.3d at 21; *Hudson*, 503 U.S. at 5 (citation omitted).

## 1. Gardine has Failed to Allege Sufficient Facts to Sustain an Eighth Amendment Claim for Excessive Force

Even if Gardine presented a triable issue of material fact, he does not have a valid Eighth Amendment claim. The videotapes show Gardine acting recklessly in a prison environment. He was shown picking up a chair and smashing it into an off-camera area and taking an object and cutting himself with it. The tapes show that he caused himself to bleed, that he was yelling at the correctional officers, and that he picked up the chair twice and swung it. Even if glass had not been shattered, the Court finds that such actions are enough to merit restraining Gardine. Gardine demonstrated on videotape that he was not in control and that Defendants applied reasonable force to obtain control over him.

At no point did Defendants harm Gardine. There is no objective evidence that Gardine was assaulted or subjected to excessive force by Defendants, nor has any subjective evidence of malicious intent been shown. On the contrary, Defendants acted reasonably given the circumstances of the situation and applied only as much force as was necessary to regain control over Gardine. I recommend that Gardine's claims be **DISMISSED** and Defendants' Motion for Summary Judgment **GRANTED.**

11

## IV. CONCLUSION

In conclusion, I recommend that Defendants' Motion for Summary Judgment Dismissing

Complaint (Doc. No. 22) be **GRANTED**. Pursuant to Rule 72, Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days after being served with a copy of the recommended

disposition to file written objections to this Report and Recommendation. Such objections shall

be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to

the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to the

chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall

constitute a waiver of those objections both in the District Court and on later appeal to the

United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of

Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1)

(West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**Dated: February 24, 2010**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**
Plaintiff
Wayne Gardine, 96-A-5097
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

Counsel for Defendants
Donald Nowve
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271